PEOPLE ex rel. MOSKOWITZ v. JENKINS, Chief of Police.

(Supreme Court, Appellate Division, Third Department. November 16, 1910.)

1. LICENSES (§§ 5½, 22*)—MUNICIPAL CORPORATIONS—SALES OF TRANSITORY STOCKS—VALIDITY.

General Municipal Law (Consol. Laws, c. 24) § 85, prohibiting a sale of transitory stock of goods advertised as a bankrupt or fire sale without first obtaining from the municipality a license, is a valid police measure, and the requiring of a license to carry on the business, reposes in the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

municipal authorities a discretion to grant or refuse the license, depending on their understanding of the good faith of the seller.

[Ed. Note.—For other cases, see Licenses, Dec. Dig. §§ 5½, 22.*]

2. LICENSES (§ 7*)—MUNICIPAL CORPORATIONS—SALES OF TRANSITORY STOCKS—VALIDITY.

The statute authorizing the imposition of a license fee of from $25 to $100 per month is not invalid, as authorizing an excessive license.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. § 15; Dec. Dig. § 7.*]

3. LICENSES (§ 7*)—SALES OF TRANSITORY STOCKS—VALIDITY.

One advertising a sale of transitory stock as a bankrupt or fire sale, while the sale is a fraudulent sale of spurious goods, may not question the validity of a municipal ordinance fixing the license fee authorized by General Municipal Law (Consol. Laws, c. 24) § 85, at $100, on the ground that the license is excessive.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. § 15; Dec. Dig. § 7.*]

Cochrane, J., dissenting in part.

Appeal from Special Term, Warren County.

Habeas corpus by the People of the State, on the relation of Phillip Moskowitz, against Fred Jenkins, chief of police of the city of Glens Falls, to obtain his discharge from a conviction of a violation of the General Municipal Law (Consol. Laws, c. 24) § 85, on the ground that the statute is unconstitutional and the conviction void. From an order denying relief and remanding relator to custody, he appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, and SEWELL, JJ.

Henry W. Williams, for appellant.
J. Edward Singleton, for respondent.

JOHN M. KELLOGG, J. The statute in question is a police measure evidently based upon the view of the Legislature that transitory stocks advertised for sale as bankrupt or fire. sales are usually fraudulent, and the goods of inferior quality; that, instead of the goods being forced upon the market at a sacrifice by the misfortune of the owner, they are purchased for sale and sold because they can be sold at a profit. It is fairly within the police power to protect the people from fraud and deception, and this statute is evidently intended to protect the public from a fraudulent business.

Requiring a license to carry on such a business reposes in the city authorities a discretion to grant or refuse the license, depending upon their understanding of the good faith of the sale and the seller. People ex rel. Schwab v. Grant, 126 N. Y. 475, 27 N. E. 964. I have no doubt about the power of the Legislature to regulate such sales, and to give to the local authorities a discretion to license such as are proper and refuse a license to those which are improper. But it is alleged that the license fee imposed by the statute, from $25 to $100 a month, is excessive, and therefore the statute is not properly a police regulation, but is really intended as a revenue measure or to protect local merchants from traveling merchants. We cannot determine the

meaning of the statute by saying that the license fee may be $100 a month; consequently $1,200 a year. The license only relates to transitory sales, and the Legislature probably had in view that, at the end of the first or second month the stock would move on to another locality.

From the doubtful nature of the business, the city, before granting the license, is required to investigate it and its proprietor, and determine whether the sale proposed is in good faith a bankrupt or fire sale, properly conducted, of honest goods, or whether it is a fraudulent sale made under a false name and for the purpose of deception. If the license is granted, in order to protect the community from sales of this questionable character, a further responsibility is thrown upon the local authorities to see that it is in fact a bona fide sale, fairly conducted, so that they may refuse to renew the license, or take necessary steps to protect the public from fraud while the license continues. There is also the chance that sales of this nature advertised may collect a crowd and throw upon the community some additional burden of police regulation. Twenty-five dollars is the minimum license fee in a city for an ordinary case, and $100 the maximum fee for a most extraordinary case in the largest city. It cannot be said that these figures are so exorbitant that it imputes a bad faith to the Legislature and makes a revenue measure of what was evidently intended as a mere police regulation.

I think, therefore, the statute was valid, and it prohibited the sales the relator was making unless he obtained a license. He made no effort to obtain a license, and clearly has violated the statute.

It is further contended that the aldermen, by fixing the license fee at $100, made the ordinance illegal and void. The ordinance is fairly within the terms of the statute. No ordinance had been adopted at the time the relator began his sale. The ordinance in question, therefore, was made with special reference to him, and its validity or invalidity may very properly be considered by applying it to his case. The advertisements issued by the relator clearly indicate a fraudulent sale of spurious goods. Upon the trial, and in his moving papers, he makes no effort to show that his goods were actually bankrupt or fire goods, or that he was proceeding in good faith, and whatever he might claim in that respect would be fully answered by his advertisement, which shows that a mayor of the city, acting with due regard to the public interests, would refuse him a license. Clearly if a license were to be granted him from the nature of his business as appears by the record, it is fair to assume that the license fee would be wholly expended in trying to protect the citizens from the fraudulent sales which he sought to make. The relator is not in a position to question whether the license fee is too high with reference to an honest fire or bankrupt sale properly conducted. His evidently was not of that kind, and the court need not consider that question until some person fairly entitled to a license raises it. It is improbable that any license could have been granted to him no matter what the fee was, and therefore he is not prejudiced if the fee is rather large. A person not fairly entitled to the license is not in a favorable position to claim that the li-

cense fee is too high, and ought not to be permitted to carry on a business for which he could not obtain a license upon the mere pretext that the fee is too high.

I, favor an affirmance of the order. All concur, SMITH, P. J., in result, except COCHRANE, J., who dissents on the ground that a license fee of $100 a month is not reasonably necessary for the accomplishment of the legitimate purposes of the statute and is unduly oppressive, and HOUGHTON, J., not sitting.